UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

SHERRY NICHOLSON                                              PLAINTIFF

VS.                              CIVIL ACTION NO.4:07CV74TSL-LRA

DART CONTAINER CORPORATION,
COMPANY OF MISSISSIPPI, LLC                                  DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendants
Dart Container Corporation and Dart Container Company of
Mississippi (collectively Dart) for summary judgment pursuant to
Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff Sherry
Nicholson has responded in opposition to the motion and the court,
having considered the memoranda of authorities, together with
attachments, submitted by the parties, concludes that the motion
is well taken and should be granted.

Plaintiff Sherry Nicholson is employed by defendant Dart as
an inspector packer and has been so employed since 1999.
Plaintiff brought this action alleging she was forced to work in a
sexually hostile working environment and was retaliated against
for opposing unlawful sexual harassment, in violation of Title VII
of The Civil Rights Act of 1964, as amended, 42 U.S.C.
§ 2000e *et seq*.

According to plaintiff's version of the facts, the harassment
she experienced started with Larry Sweat, a production manager at

the plant, who stopped by her work station one day and began talking to her about "titty bars" in Atlanta, remarking about how the women performing in these bars were built, and commenting that plaintiff was not built like the women in these bars.  Plaintiff alleges that Sweat walked to one end of her work station, looked around, and then walked back to her and began massaging her shoulders.  Although not immediately, plaintiff claims she did report Sweat's massaging her shoulders to plant manager John Lowery; and while she claims he was unreceptive, she believed that in response to her complaint, Sweat must have been counseled to refrain from such behavior and plaintiff had no further incidents involving Sweat.

Plaintiff alleges that about six months to a year following the incident with Sweat, another of her managers, John Lucas, a print mechanics supervisor at the plant, exposed his penis to her at work, and on this and other occasions, made numerous sexual propositions and vulgar sexual comments to her, including telling her he would put a "good fucking on her"; asking her and another woman to have a "threesome" with him; asking her to go to Geyser Falls with him and when she refused, saying to her, "You don't want to give me any of that pussy do you?"; trying to pull down her pants so that he could see what type of panties she was wearing; asking her to "shake that ass"; and saying to her, "You

just like those black boys because they have big long dicks and white boys don't."

On September 21, 2005, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), and on September 29, 2005, she filed an amended charge of discrimination, complaining of these incidents involving Lucas, and of the earlier incident with Sweat.  Plaintiff admittedly did not previously report any of Lucas's alleged misconduct, even though she knew that Dart had an anti-harassment policy which provided for reporting sexual harassment; but she claims she did not report Lucas because Dart had allegedly done nothing to correct Sweat's purported behavior (shoulder touching) when it was reported, leading her to conclude it would be futile to report Lucas.

In January 2006, four months after her initial EEOC charge, plaintiff filed another EEOC charge, alleging she had been subjected to retaliation on account of her earlier EEOC charges. She complained in this charge (1) that John Lucas asked her to go out with a white co-worker, Jamie Downey, and stated that he wanted to look at the plaintiff's "butt"; (2) that she complained to lead person Tina Dearman about the harassment, but it had not stopped; (3) that she continued to work with John Lucas; (4) that Lucas would walk past her and hit scrap boxes, and when nobody was looking he would come and say things to her; (5) that Aaron

3

Wilborn, another supervisor, did not notify her of a safety meeting; and (6) that Wilborn tried to find out why she was on medical leave.  On October 17, 2006, plaintiff filed another EEOC charge claiming that Terrance McGowan, described by her as an African American "supervisor," showed her a picture of an African American male's penis on his cell phone.

Defendant has moved for summary judgment on plaintiff's sexual harassment claim, contending that the evidence does not support plaintiff's allegation that she was subjected to actionable sexual harassment, and that even if plaintiff could prove her allegations, Dart is nevertheless entitled to summary judgment on the basis of its Ellerth/Faragher affirmative defense.

If a plaintiff asserting a sexual harassment claim under Title VII has suffered a "tangible employment action," her suit is classified as a "quid pro quo" case; if she has not, her suit is classified as a "hostile environment" case.  Williams v. Barnhill's Buffet Inc., No. 08-60136, 2008 WL 3911068, 2 (5th Cir. Aug. 26, 2008) (citing Casiano v. AT & T Corp., 213 F.3d 278, 283 (5th Cir. 2000)).  As the Fifth Circuit explained in Williams, "[t]his distinction makes a difference" in that "[a]n employer that is held vicariously liable for 'quid pro quo' harassment is not permitted to advance the affirmative defense enunciated by the Supreme Court in Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257 (1998) and Faragher v. City of Boca Raton,

4

524 U.S. 775, 118 S. Ct. 2275 (1998)," whereas "an employer that is found to have maintained a 'hostile work environment' may assert the Ellerth/Faragher affirmative defense." Id. (citing Casiano, 213 F.3d at 284.  In the case at bar, plaintiff does not contend she suffered a "tangible employment action," and her claim is thus appropriately analyzed as one of hostile work environment.

In its motion for summary judgment, Dart vigorously denies that plaintiff was ever exposed to actionable sexual harassment, arguing variously that some of the incidents upon which plaintiff's claim is based were not directed against plaintiff *because of* her gender; that plaintiff has admitted she fabricated some of the incidents on which her claim is based; and that while the remaining incidents may have been "boorish and offensive," these incidents not only were not sufficiently severe or pervasive to rise to the level of actionable sexual harassment, but they also were neither unwelcome by, nor subjectively offensive to this plaintiff, who did not as a consequence of the alleged incidents experience "an intimidating, hostile, or offensive working environment."  See Waltman v. International Paper Co., 875 F.2d 468, 484 (5th Cir. 1989) (citations omitted).  While a jury might well find Dart's arguments on this point persuasive, if not compelling, this court is unwilling at this stage to conclude as a matter of law that plaintiff's proof is insufficient to create a genuine issue of material fact as to the existence of a hostile

work environment.  And it need not do so to conclude that summary judgment is proper, for even assuming for the sake of argument that plaintiff suffered a hostile work environment, the court is of the opinion that Dart has satisfied both prongs of the Ellerth/Faragher defense as a matter of law.

To establish the Ellerth/Faragher affirmative defense, Dart must show by a preponderance of the evidence "(a) that [it] exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise."  Ellerth, 524 U.S. at 765, 118 S. Ct. at 2270; Faragher, 524 U.S. at 807, 118 S. Ct. at 2293.

In the case at bar, Dart has presented evidence that it exercised reasonable care to prevent sexual harassment in the workplace.  In particular, Dart has presented evidence that all newly-hired employees go through an orientation program beginning their first day on the job in which Dart's employee handbook and the sexual harassment policy are reviewed with them.  Newly hired employees then undergo an acclimation program conducted by production floor trainers or the human resources department, which includes a thirty to forty minute video giving examples of sexually harassing conduct, explaining how to report it, and

describing how such claims will be handled.  Dart's sexual

harassment policy provides in pertinent part, as follows:

> Dart expects that all relationships among persons in the
> workplace will be business-like and free of bias,
> prejudice and harassment.  Sexual harassment is defined
> as unwelcome sexual advances, requests for sexual favors
> and other verbal or physical conduct of a sexual nature
> when: a) submission to the conduct is made either
> explicitly or implicitly a term or condition of an
> individual's employment; b) submission to or rejection
> of the conduct is used as the basis for employment
> decisions; or c) such conduct has the purpose or effect
> of unreasonably interfering with an individual's work
> performance, or creating an intimidating, hostile, or
> offensive working environment.
>      Employees should report any harassment directly to
> the Plant Manager, or the Plant Human Resources
> representative, who will investigate the complaint and
> make every effort to resolve it promptly, effectively,
> and fairly.  If necessary, the following Corporate Human
> Resources representatives in Mason may be contacted at
> 1-800-545-3278; The Manager – Human Resources
> Development (ext. 2357) or the Human Resources
> Generalist (ext. 2852).
>      All actions taken to resolve complaints of
> harassment will be confidential.  Retaliatory action
> against an employee who charges harassment will not be
> tolerated.  Any employee found to have engaged in
> harassment of any kind will be subject to appropriate
> sanctions, up to and including termination.

It is undisputed that plaintiff was familiar with Dart's

policy for reporting sexual harassment.  She received a copy of

the Dart Employee Handbook and sexual harassment policy when she

was hired on August 17, 1999, and was provided additional copies

periodically, including in October 1999, February 2002, March 2003

and July 2004.  Further, the record evidence establishes that in

January 2004, in close proximity to the events at issue here, all

employees, including plaintiff, received in-depth training as to

the following: (1) the definition of and recognizing harassment
and sexual harassment (quid pro quo and hostile work environment);
(2) Dart's sexual harassment policy; and (3) employees'
responsibilities on preventing harassment and reporting harassment
of any kind.  This training included a video titled "Sexual
Harassment: Serious Business," a follow-up exercise to affirm
employees' knowledge of the material, and a demonstration of
examples of verbal, nonverbal and physical inappropriate behavior
at the workplace, along with examples of appropriate behavior.

     "While not required as a matter of law, the existence of an
appropriate anti-harassment policy will usually satisfy the first
prong of the <u>Burlington</u>/<u>Faragher</u> defense."  <u>Taylor v. Texas Dept.</u>
<u>of Criminal Justice-Instit. Div.</u>, No. 3:98CV2972-AH, 2000 WL
528410, 7 (N.D. Tex. May 1, 2000) (citing <u>Burlington</u>, 118 S. Ct.
at 2270).  Plaintiff does not deny that Dart had in place an
appropriate anti-harassment policy.  She submits, though, Dart
cannot rely on the policy to avoid liability because "it is quite
evident that the defendant had done a very poor job of training on
the policy or enforcing the policy" because at least some of its
employees, while being generally aware there was a policy, have
indicated they were not aware they had a duty to report sexual
harassment.[1]  The fact is, however, this plaintiff admittedly had

_____

     [1]   Plaintiff has testified that she told one of her fellow
workers, William McCann, who in turn told another co-worker, Davis
McDonald, about Lucas's having exposed himself to plaintiff, and

been trained on Dart's sexual harassment policy and was aware of
her duty to report sexual harassment.  Cf. Washington v. City of
Shreveport, Civil Action No. 03-2057, 2006 WL 1778756, 9 (W.D. La.
June 26, 2006) (granting summary judgment for City on § 1983 claim
for sexual harassment based on alleged failure to train
correctional officers, where offending officer had been trained
and supervised as to the City's sexual harassment policy, and
observing, "That a particular officer may be unsatisfactorily
trained will not alone suffice to fasten liability on the city,
for the officer's shortcomings may have resulted from factors
other than a faulty training program.").  In the court's opinion,
the evidence as to Dart's anti-harassment policy and training on
the policy establishes that Dart exercised reasonable care to
prevent any sexually harassing behavior.  See Shaw v. Autozone,
Inc., 180 F.3d 806, 811-812 (7th Cir. 1999)(employer exercised
reasonable care as a matter of law where employer adopted and
distributed to its employees a sexual harassment policy of zero
tolerance; the employee received a copy of the policy; the
employee was required to read and abide by the policy as a
condition of employment; the policy provided multiple mechanisms

---

yet neither reported this incident or instructed plaintiff to
report the incident to anyone.  McDonald, in fact, testified that
he did not think it was a good idea to confront Lucas about his
behavior, and he claimed he had "no confidence that reporting it
to HR or anybody above him would do anything but probably get my
ass in hot water."

for the prompt resolution of complaints; and the employer
regularly conducted training sessions on sexual harassment).

The record evidence also establishes beyond dispute that once
Dart was informed of plaintiff's allegations of sexual harassment,
it took prompt remedial action that was "reasonably calculated to
end the harassment." Skidmore v. Precision Printing & Packaging,
Inc., 188 F.3d 606, 615-16 (5th Cir. 1999).  Of all the instances
of harassment alleged by plaintiff, she only claims to have
directly informed Dart, through plant manager John Lowery, of
Larry Sweat's having once massaged her shoulders.  In this regard,
plaintiff testified that during an annual appraisal about a month
after the encounter with Sweat, Sweat and Joe Lowery initially
told plaintiff they thought one of her co-workers, William McCann,
was spending too much time hanging around plaintiff's work station
when he should be working.  According to plaintiff's testimony,
after Sweat left, she spoke to Lowery alone, and told him about
Sweat's having massaged her shoulders.  She testified that she
intended to tell him about Sweat's comments about the titty bars
as well, but before she got to that, Lowery changed the subject
and began talking about production, and the product, and the fact
that they were there to make cups.  Plaintiff said that at that
point, the conversation was "basically over" because she got up to
leave.  She left without telling him about Sweat's titty bar
remarks.

10

While Lowery denies that plaintiff told him directly that Sweat had massaged her shoulders, he did testify that in the appraisal meeting, plaintiff commented to him that he had no idea what went on outside his office and simultaneously gestured to her shoulders, which he interpreted as her indicating that someone had touched someone else's shoulders.  He claims that when he questioned plaintiff about this, she refused to say anything more or to answer his questions, and so he initiated an investigation to try to find out what was going on.  At his direction, Vickie Brown, the plant's human resources representative, began looking into plaintiff's allegation.  According to Dart, not long into the process, Brown happened to see Sweat massaging another employee's shoulders.  Brown questioned Sweat, who maintained that this was not intended as a sexual act, and that he massaged both male and female employees' shoulders.  While Brown's further investigation confirmed this, she nevertheless counseled Sweat that his touching of employees' shoulders could be misinterpreted, and instructed him to refrain from such conduct.

In her response brief, plaintiff undertakes to dispute Dart's position that it took appropriate action in response to her report regarding Sweat, arguing that after her appraisal, Lowery never mentioned anything else to her about Nicholson's complaint concerning Sweat, and declaring that as far as she knows, there was no follow-up to her complaint concerning Sweat and that

defendant never conducted a formal investigation.  However, the proof is to the contrary.  Indeed, in her deposition, plaintiff testified that not long after she told Lowery about Sweat's massaging her shoulders, she knew that someone had spoken to Sweat about her allegation.  She testified that about a week after she reported Sweat to Lowery, Sweat came through the breakroom where she was sitting and grabbed her shoulders violently and massaged them aggressively.  Later that evening, a co-worker, Jerry Hinton, asked her if she had reported Sweat, and he told her that Vickie Brown had come to him and asked him if he had ever seen Sweat massaging any employee's shoulders.[2]  Plaintiff testified that after this, Sweat never touched or massaged her shoulders again, and she never again saw him touch or massage any other employee's shoulders.  She indicated it was clear to her from these events that there had been an investigation and that Sweat had been counseled regarding his behavior.

Furthermore, while plaintiff never directly reported Lucas's alleged harassment to Dart so that Dart first learned of her allegations through its receipt of her EEOC charges, it is clear that Dart took appropriate action to investigate and correct any misconduct it found.  As Dart notes, a "threshold step in correcting harassment is to determine if any occurred, and that

_____

[2]     Hinton's response to Brown was consistent with what Sweat had told Brown, namely, that Hinton had seen Sweat massage both male and female employees' shoulders.

requires an investigation that is reasonable given the circumstances." Baldwin v. Blue Cross/Blue Shield of Alabama, 480 F.3d 1287, 1304-04 (11th Cir. 2007). "All that is required of any investigation is reasonableness in all of the circumstances, and the permissible circumstances may include conducting the inquiry informally in a manner that will not unnecessarily disrupt the company's business, and in an effort to arrive at a reasonably fair estimate of the truth." Id." Moreover, "the requirement of a reasonable investigation does not include a requirement that the employer credit uncorroborated statements the complainant makes if they are disputed by the alleged harasser." Id.

Here, Dart has presented uncontroverted evidence that immediately upon receipt of plaintiff's initial EEOC charge, an investigation was undertaken by a team from Dart's corporate legal department. After interviewing the alleged harassers, the team concluded that plaintiff's claims were unsubstantiated. Upon receiving plaintiff's second EEOC charge, Dart sent a team from Michigan who interviewed fourteen witnesses; the result of these interviews was doubt as to plaintiff's credibility and no substantiated claims against the alleged harassers.

In addition to conducting an investigation, the employer must offer a "remedial measure that is 'reasonably likely to prevent the misconduct from recurring.'" Baldwin, 480 F.3d at 1305. "[W]hat is appropriate remedial action will necessarily depend on

13

the particular facts of the case . . . [including] the
effectiveness of any initial remedial steps." Skidmore, 188 F.3d
at 615.  In this case, notwithstanding that Dart's investigation
failed to substantiate plaintiff's allegations of harassment, Dart
did determine that both Sweat and Lucas had engaged in
inappropriate conversations with plaintiff and both were issued
warnings.  Thus, in both instances, Dart investigated the
plaintiff's claims, and responded in a way that was designed to,
and in fact did, put an end to the allegations of harassment.  See
Baldwin, 480 F.3d at 1306 (holding that whereas "warning the
harasser and counseling him ordinarily is enough where the
employer is able to substantiate the allegations, it certainly
follows that the same remedy is enough where it is not able to do
so").

      The court observes, too, that as part of its response, Dart
provided additional intensive sexual harassment training at the
plant to all employees.  In January 2006, Lori Randall, a
qualified Human Resources Training Manager for Dart, presented two
sessions of intensive sexual harassment training to all
supervisors at the plant, both of which were attended by plant
management.  The supervisors were shown a video titled "It's about
Respect!" so they could better convey the information to their
employees; they also were tested on the material and given a
"Personal Commitment to Action" form to sign.  Subsequently,

14

training sessions with all employees at the plant covered respect at the workplace.

Plaintiff does not dispute any of this, and her only challenge of substance to the adequacy of Dart's response to her allegations relates to her charge that her co-worker, Terrance McGowan, showed her a photograph of a black man's penis on his cell phone.[3] Yet the evidence shows beyond dispute that Dart began investigating plaintiff's claim against McGowan the very moment it became aware of her allegation; Vickie Brown had McGowan's cell phone confiscated and McGowan was escorted to the front office, where his phone was examined and found to contain no such photographs, nor evidence that any such photograph had been deleted. Plaintiff's challenge to the sufficiency of Dart's investigation is simply not supported by the record evidence, which, on the contrary, establishes that Dart, in all instances, exercised reasonable care to prevent and correct promptly any sexually harassing behavior.

The record also clearly establishes that plaintiff failed reasonably to avail herself of Dart's preventive and corrective

_____

[3]     The court notes that although plaintiff identified McGowan as a supervisor in her EEOC charge, it is undisputed that McGowan was not employed in any supervisory capacity; he was merely plaintiff's co-worker. Under the law, an employer cannot be held vicariously liable for a co-worker's harassment unless it has been negligent either in discovering or remedying the harassment. See Guarin v. Our Lady of Lourdes Regional Medical Center Inc., No. 98-30148, 1999 WL 47035, 2 (5th Cir. 1999) (citations omitted).

sexual harassment policies.  Plaintiff admits she did not report
Sweat's alleged "titty bar" remarks, and that she never reported
any of Lucas's alleged harassment; but she maintains that her
failure to do so was reasonable.  She claims that following her
initial report to Lowery about Sweat's massaging her shoulders,
Lowery changed the subject, and thereby "effectively denied [her]
the chance to report what she believed to be sexual harassment."
She further testified that "the reason [she] didn't feel
comfortable reporting John Lucas was because of how [she] had been
treated by management with Joe Lowery and Vickie in Human
Resources," and "because nothing was ever done to Larry Sweat."
In this vein, the Fifth Circuit has explained that,

> In most cases, . . . once an employee knows his initial
> complaint is ineffective, it is unreasonable for him not
> to file a second complaint, so long as the employer has
> provided multiple avenues for such a complaint.  This
> conclusion is consistent with title VII's intent to
> encourage "saving action by objecting employees."
> Faragher, 524 U.S. at 807, 118 S. Ct. 2275.

Lauderdale v. Texas Dept. of Criminal Justice, Institutional Div.,
512 F.3d 157, 164-165 (5th Cir. 2007).  Thus, in Lauderdale, the
court found it was "unreasonable for Lauderdale not to pursue any
other avenue available under [her employer's] policy after [her
supervisor] explicitly indicated his unwillingness to act on her
complaint" where the policy offered other avenues for reporting
sexual harassment.  Id. at 164.  See also Wyatt v. Hunt Plywood
Co., 297 F.3d 405, 412-13 (5th Cir. 2002) (holding it was

unreasonable for the plaintiff not to report the harassment to another person listed in the defendant's reporting policy once her initial complaint to her supervisor was obviously ineffective).

Dart's reporting policy provided an avenue for reporting that did not involve either Lowery, the plant manager, or Vickie Brown, the plant's human resources representative.  The policy provided: "If necessary, the following Corporate Human Resources representatives in Mason may be contacted at 1-800-545-3278; The Manager - Human Resources Development (ext. 2357) or the Human Resources Generalist (ext. 2852)."  Plaintiff could have, but did not report via either alterative, and has offered no explanation for her failure to do so.  Consistent with <u>Lauderdale</u> and <u>Wyatt</u>, the court concludes that plaintiff's failure to use one of the other reporting avenues provided by Dart's sexual harassment policy was unreasonable.

Based on the foregoing, the court concludes that Dart has satisfied both prongs of the <u>Ellerth</u>/<u>Faragher</u> defense as a matter of law.  On the first prong, Dart has presented ample evidence that it exercised reasonable care to prevent sexual harassment.  Moreover, the evidence shows that Dart took prompt remedial action after it received reports of alleged sexual harassment.  Accordingly, summary judgment will be entered for defendant on plaintiff's hostile work environment claim.

17

In addition to this claim, plaintiff has also asserted a claim for retaliation.  To establish a prima facie case of retaliation, plaintiff must demonstrate that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the actual employment action.  Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 484 (5th Cir. 2008).

Defendant acknowledges that plaintiff engaged in protected activity, but it denies that she suffered the requisite adverse employment action or that there was any causal link between any arguable adverse employment action and her EEOC charges. Specifically, Dart contends that plaintiff has recanted and/or been shown to have fabricated five of the six alleged retaliatory acts identified by plaintiff in her EEOC charge; and it contends that the sixth alleged act, namely, Aaron Wilborn's failure to give her written notice of a safety meeting, has been shown to have been inadvertent.  It points out that in any event, none of these alleged acts involved any adverse employment action.  In response to defendant's motion, plaintiff has not contended otherwise.[4]

---

[4]    In fact, in her response to the motion, plaintiff addresses only one of these allegations, namely, her charge that Wilborn retaliated against her by not including her in a safety meeting.

18

In its motion, Dart points to numerous additional allegedly retaliatory acts identified by plaintiff in her deposition (but not in any EEOC charge), including her claims that (1) her supervisor, Aaron Wilborn, asked her to volunteer to work a holiday (which she refused); (2) Wilborn requested that she provide a Work Release or written authorization to return to work after a period of medical leave in December 2005; (3) on one occasion, Wilborn asked her to run additional machines that were not assigned to her for that day (which she refused to do); (4) on another occasion, Wilborn was "bothering her" at her work station; (5) Brown once refused to give plaintiff her check a day early so she could use it on vacation and was ultimately rude when she relented and gave plaintiff the paycheck; (6) plaintiff was counseled for violating the dress code by wearing a tank top and a Playboy bunny t-shirt; (7) Wilborn asked her not to ridicule a co-worker who had complained that plaintiff was harassing her; (8) during an appraisal, Wilborn gave her a low evaluation; (9) an incident in which Vickie Brown claimed that another employee, Kassandara-Walker Dixon, reported she was uncomfortable acting as plaintiff's informal witness to meetings between plaintiff and management; (10) plaintiff was talked to by Joe Lowery and Vickie Brown about fighting with a co-worker. Dart argues that summary judgment is in order on each of these allegations because none involved an adverse employment action and because there is no

19

causal link between the alleged retaliatory act and plaintiff's EEOC charges.

Prior to the Supreme Court's decision in <u>Burlington Northern & Santa Fe Railway Co. v. White</u>, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006), the Fifth Circuit rule for retaliation claims was that "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." <u>Watkins v. Texas Dept. of Criminal Justice</u>, 269 Fed. Appx. 457, 461, 2008 WL 686571, 3 (5th Cir. 2008) (quoting <u>Green v. Adm'rs of Tulane Educ. Fund</u>, 284 F.3d 642, 657 (5th Cir. 2002)).  In <u>Burlington Northern</u>, the Court rejected the "ultimate employment decision" standard, and now only requires a plaintiff to show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  126 S. Ct. at 2415 (internal quotations omitted); <u>see</u> <u>Watkins</u>, 2008 WL 686571, at 3.

In its motion, Dart contends that none of these alleged retaliatory acts involves an adverse employment action because, to the extent there is any factual basis for plaintiff's allegation, there was a colorable basis for Dart's action and because plaintiff has admitted that none of Dart's actions would have dissuaded her from filing an EEOC charge.  <u>See</u> <u>DeHart v. Baker</u>

20

<u>Hughes Oilfield Operations, Inc.</u>, 214 Fed. Appx. 437, 441-442, 2007 WL 126081, 3 (5th Cir. 2007) (employer's issuance of written warning to employee for insubordination, being argumentative and excessive absenteeism was not "adverse employment action" because "there were colorable grounds for the warning and a reasonable employee would have understood a warning under these circumstances was not necessarily indicative of a retaliatory mind-set," and because the written warning "did not in fact dissuade a charge of discrimination").  Defendant argues that plaintiff's complaints, at worst, concern nothing more than "petty slights, minor annoyances, and simple lack of good manners," which do not "rise to the level of material adversity."  <u>See Aryain v. Wal-Mart Stores Texas LP</u>, 534 F.3d 473, 485 (5th Cir. 2008) (as a matter of law, rude treatment did not rise to the level of material adversity but instead fell into category of 'petty slights, minor annoyances, and simple lack of good manners' that employees regularly encounter in the workplace and which the Supreme Court has recognized are not actionable retaliatory conduct").

In response to Dart's motion, plaintiff addresses only one of her allegations, namely, her charge that Wilborn gave her what she considers a poor job appraisal, which she contends affected her raise.  She argues, "A reasonable jury could find that by giving Nicholson a low rating on her evaluation, one which Wilborn did not have the proper documentation for, Wilborn was retaliating

against Nicholson."  Plaintiff adds in her response that she "was denied important job assignments after she filed her EEOC charge like the McDonald's campaign where they were to produce 10,000 copies for McDonald's."

To the extent plaintiff has failed to respond to Dart's motion as it pertains to the additional instances of alleged retaliatory acts identified by plaintiff in her deposition, the court concludes that Dart is entitled to summary judgment for the reasons assigned in Dart's motion.  As to plaintiff's new allegation that she was denied "important job assignments," plaintiff has not suggested why Dart's failure to assign her to print McDonald's cups ought qualify as material adversity, nor should it, as plaintiff has acknowledged there was no additional pay, special status or other benefit to printing McDonald's cups. This allegation falls into the "petty slight" category.

As for the allegedly retaliatory performance appraisal, in the court's view, plaintiff has not shown that the challenged appraisal was appreciably lower than appraisals she had received prior to filing her EEOC charges; and in any event, the fact that the challenged evaluation occurred two years after plaintiff's initial EEOC charges forecloses any reasonable finding that her allegedly "poor" evaluation was causally related to her EEOC charges.  Summary judgment is therefore proper on plaintiff's retaliation claim.

Based on the foregoing, it is ordered that Dart's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 4th day of September, 2008.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE